## Watson v. Nickell.

(Decided January 30, 1917.)

## Appeal from Rowan Circuit Court.

Appeal and Error—When Judgment Will Not be Disturbed—Evidence.—Plaintiff seeks to enjoin the sale of land under execution against him because he claims that he had previously settled the judgment upon which the execution issued, and that he was surety on the note upon which the judgment was rendered, and the execution was not issued until more than seven years after it could have been issued and that he is no longer liable for the payment of the judgment. The trial court decided both of the issues against the plaintiff. The evidence examined and found to be conflicting, but upon the whole case it cannot be determined with reasonable certainty that the court erred on his finding of fact, and there being doubt in the mind of this court as to the truth of the matter, the judgment will not be disturbed.

HAZELRIGG & HAZELRIGG for appellant.

JOHN A. JUDY for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant, Henry Watson, by his petition filed in the Rowan Circuit Court, sought to enjoin the appellee, G. A. Nickell, and the sheriff of Montgomery county from enforcing a lien obtained by the levy of an execution from the Rowan Circuit Court on some real estate in Montgomery county as the property of appellant. The execution was issued upon a judgment of the Rowan Circuit Court rendered on March 10th, 1903, against appellant and S. S. Cassity for the sum of $425.00 with interest from November 10, 1894, with costs, and was based upon a note which appellant and Cassity had executed to appellee on November 10, 1893, by which they promised and agreed to pay him $425.00 twelve months thereafter.

The grounds alleged for obtaining the injunction are: (1) That appellant, some time after the rendition of the judgment sought to be collected by the levy of the execution, settled the judgment with appellee by paying to him an agreed sum of $50.00, which was accepted in full satisfaction of appellant's liability thereunder; and, (2) that appellant was surety, only, on the note upon which the judgment was rendered, his

co-obligor, Cassity, being the principal in the note, and the execution sought to be enjoined not having been issued within seven years after 'it could have been issued, he is thereby discharged from liability under the provisions of section 2548 of the Kentucky Statutes.

These grounds were denied by the answer, and upon final submission of the cause the temporary injunction granted at the beginning of the suit was discharged and the petition dismissed. To reverse that judgment this appeal is prosecuted.

It will be seen that the questions presented are ones of fact, only, the determination of which will require us to make a brief review of the testimony bearing upon them.

Upon the first ground, the appellant, to whom we shall refer as plaintiff, testified that about 1906 or 1907, while riding on the train between Mt. Sterling and Clay City, in a conversation with appellee, to whom we shall refer as defendant, it was agreed that if plaintiff would pay to defendant the sum of $50.00 in cash the latter would discharge him from all further liability arising from the judgment; that he at that time paid to the defendant the $50.00 and took his receipt therefor and that the receipt was destroyed in a fire which afterwards burned the plaintiff's dwelling. He proved by a witness named Wilson that within the last ten years he (witness) was on a train going east and leaving Mt. Sterling at 2:10 p. m., and that on that train he saw plaintiff in conversation with another gentleman and then adds: "I saw Mr. Watson take some money from his pocket, and after counting it, gave it to the other gentleman, and Mr. Watson immediately wrote something in a booklet and this man signed it." The witness does not know who the man was; how much money he paid, when the occurrence took place, other than that it was within the last ten years, nor does he state any other fact tending to show that his testimony should be accepted with credibility or given convincing force. It is not shown by plaintiff that the defendant is the only man "within the last ten years," to whom he paid money on a train, and for aught that appears, even if Wilson saw that to which he testifies, the transaction may not have been with an individual other than the defendant.

Opposed to this testimony, the defendant flatly denied the entire occurrence. He furthermore testified,

and it was not denied by plaintiff, that since the time of this alleged occurrence he had frequently importuned the plaintiff to pay or settle in some way the judgment; that upon such occasions the plaintiff would offer him an insignificant sum accompanied by the statement that he, plaintiff, was insolvent and contemplated the immediate filing of ·a petition in bankruptcy resulting in the defendant obtaining nothing whatever.

The rule governing this court in reviewing the finding of facts by the chancellor is that: "A chancellor's finding on a question of fact will not be disturbed on appeal, where the evidence leaves the mind in such doubt that this court cannot say with reasonable certainty that he erred in his conclusions." Nicholson v. Ferdinand Bauer Engineering & Contracting Company, 165 Ky. 458.

Again it is stated: "A chancellor's finding of fact will not be disturbed on appeal unless against the clear preponderance of the evidence." Gambill v. Grigsby, 166 Ky. 716. Many other cases could be cited holding substantially the same, but stated in different phraseology.

With the evidence upon this point, as we have hereinbefore shown, being contradictory and some of it unsatisfactory and applying the rule above, which should govern us, we are not disposed to hold that the chancellor erroneously found the facts with reference to the alleged settlement of the judgment in favor of the defendant.

Turning now to the second contention made, it is shown by the testimony that the note upon which the judgment was obtained was executed by plaintiff and Cassity to the defendant in consideration of a printing press outfit which was removed from Morehead to Mt. Sterling, and a corporation was organized under the name of Montgomery Printing Company, which immediately began the publication of a paper known as the Montgomery County Times. Cassity was entirely in charge of the printing establishment and edited and issued the paper. The incorporators in the company were the plaintiff, defendant and some two or three others whose names are not necessary to mention. To each of them stock was issued, but the venture proved a failure and the paper ceased publication after about two years.

Upon the occasion of the execution of the notes, which was also the time of the purchase of the printing outfit, both Cassity and plaintiff went from Mt. Sterling to Morehead, where the property was located, and where the note was executed and the purchase completed. Plaintiff testified that he had no interest in the purchase of this property, but that he signed the note as surety for Cassity, who was his friend, and whom he wished to accommodate. He says the stock in the corporation was issued to him by Cassity as indemnity to him as such surety, and for no other purpose, although he does not deny that he was one of the original incorporators. Cassity says on this point in his affidavit, which was agreed to be read as his testimony: "And it is his best recollection that said Watson signed this (note) as surety for this affiant." This was all the testimony offered or heard in behalf of plaintiff upon this, his second contention.

The defendant in his testimony, on this issue, said: "I had a printing press outfit for sale, and on that (day) Watson and Mr. Cassity came to Morehead and both of them examined the outfit very carefully, and we agreed on the price of $425.00; the note was executed that day with Mr. Watson as principal on the note. Q. To whom did you understand you were making the sale? A. I made the sale to Henry Watson and S. S. Cassity." This is all of the direct testimony plaintiff produced on this issue, but the record discloses the following circumstances: That Watson and Cassity jointly made the trip to Morehead when the printing outfit was purchased and the note executed; that the suit upon the note was not filed until something near ten years had elapsed after its maturity and plaintiff made no defense to it, although, according to his contention, if he had been surety only upon it he had but to plead the seven-year statute of limitations applicable to such cases to defeat entirely any judgment against him. He is a lawyer by profession, and must have known that if his relationship to the note was that of a surety only, it required but a manifestation of this fact to defeat a recovery against him. Notwithstanding his presumptive knowledge of his legal rights as such surety, he declined to stand upon them and suffered the judgment to be rendered against him. It is almost inconceivable that he would have done this when with the slightest effort he could have escaped all liability.

It is further to be observed that throughout the negotiations for a settlement of the judgment, covering a period of ten years or more, we nowhere hear of this contention now made by the plaintiff, but it was reserved to be disclosed for the first time, not when plaintiff filed this suit, but some time thereafter by an amendment to his petition.

Considering the direct testimony upon this, plaintiff's second contention, as affected by the circumstances which we have related, and applying the rule, *supra,* which should guide us under such circumstances, we are clearly convinced that we are not authorized to disturb the finding of the chancellor on this issue of fact.

Having concluded that plaintiff neither settled the judgment, as he claims, nor was he surety upon the note on which it was rendered, it becomes unnecessary to consider other questions discussed by counsel.

Wherefore, the judgment is affirmed.